**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-76

UNITED STATES TAX COURT

DOLOROSA LUCIANO-SALAS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10926-12S.                          Filed August 11, 2014.

Dolorosa Luciano-Salas, pro se.

Cassidy B. Collins, Donna L. Crosby, and Cory H. Ellenson, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $10,820 in petitioner's Federal income tax for 2008 and an accuracy-related penalty of $2,164 pursuant to section 6662(a). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in California.

The issues for decision are whether petitioner is: (1) entitled to a deduction for $24,144 of the home mortgage interest claimed on Schedule A, Itemized Deductions; (2) entitled to a deduction for a rental real estate loss of $25,000 claimed on Schedule E, Supplemental Income and Loss; and (3) liable for an accuracy-related penalty under section 6662(a). To the extent not discussed herein, other adjustments are computational and flow from our decision in this case.

---

[1](...continued)
Code (Code), as amended and in effect for 2008, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

I. The Duplex

During 2008 petitioner resided in a duplex at the corner of Haynes Street and Cedros Avenue in Van Nuys, California (duplex or property).[2] Petitioner's sister, Caridad Salas Hileman, had acquired the duplex for $540,000 on November 9, 2006, financing the purchase by obtaining first and second mortgages of $417,000 and $123,000, respectively. The first mortgage was serviced by Indymac Federal Bank Home Loan Servicing (Indymac). The parties agree that Ms. Hileman was the responsible party on both mortgages.

On September 17, 2007, Ms. Hileman obtained a third mortgage loan of $150,000 from Wells Fargo Bank (Wells Fargo). To secure repayment of the loan, Wells Fargo obtained and recorded a "short form deed of trust" in which Ms. Hileman granted the bank a security interest in the duplex with the power to sell the property.

---

[2]Because the duplex is on a street corner, the two units are assigned separate street addresses: 14658 Haynes Street and 6518 Cedros Avenue.

Petitioner contends that she is the true owner of the duplex and that Ms. Hileman, who purportedly resides with her husband in Arizona, owns the property in name only. Petitioner testified that, because her credit rating was poor, Ms. Hileman agreed to assist her by acting as the purchaser of the property. Petitioner and Ms. Hileman did not have a written agreement memorializing the ownership arrangement described above, and petitioner did not call Ms. Hileman to testify at trial.

## II. Mortgage Payments

Petitioner maintains that she made the mortgage payments on the duplex. The record as it relates to the amount and source of mortgage payments is best characterized as muddled.

Petitioner produced receipts showing that Indymac received three separate mortgage payments of $2,172 during 2007. One of the receipts shows petitioner's name, but the other two were either illegible or merely showed Ms. Hileman's loan account number.

Indymac issued an annual account statement to Ms. Hileman crediting her with total mortgage payments of $28,297 for 2008. Petitioner's bank records reflect that she transferred $2,192 and $2,187 directly to Ms. Hileman's Indymac loan account on April 25 and September 17, 2008, respectively.

Two mortgage payments were made during 2009. The record does not reflect the source of these payments.

Petitioner made three and four mortgage payments during 2010 and 2011, respectively.

III. Additional Expenses

Petitioner asserts that she paid additional expenses related to the duplex during 2008 including taxes, insurance premiums, and gardening expenses. Petitioner did not offer any records, such as receipts or canceled checks, to show that she paid any of the additional expenses.

IV. Rental Activities

The record includes month-to-month lease agreements indicating that petitioner (as "landlord") rented out the Cedros Avenue unit for the period May 1 to June 30, 2007, and for the period beginning June 1, 2011. Petitioner reported on her 2007 and 2010 Federal income tax returns that she received rental income of $1,300 and $11,000, respectively.[3] Petitioner alleges that she renovated the duplex during 2008 and that she did not have any tenants that year.

_____

[3]The record does not include a lease agreement for 2010, and there is no indication whether petitioner reported rental income for 2011.

## V. Petitioner's 2008 Tax Return

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2008 reporting wage income of $75,749 and attaching Schedules A and E. On Schedule A she claimed a mortgage interest deduction of $25,717, including $24,144 that she attributes to the duplex.[4] On Schedule E she claimed a deduction for a rental real estate loss of $25,000 in respect of the duplex, an amount that she carried over to line 17 on Form 1040.[5] She reported no rental income and the following expenses on Schedule E:

| Item | Amount |
|---|---|
| Insurance | $200 |
| Mortgage interest | 12,667 |
| Taxes | 2,546 |
| Gardening | 600 |
| Depreciation expenses | 9,817 |
| Total | 25,830 |

[4]Respondent does not dispute that petitioner is entitled to a Schedule A deduction of $1,573 for mortgage interest that she paid to Wyndham Resort Development during the year in issue.

[5]Petitioner maintains that she properly claimed mortgage interest deductions on Schedules A and E because she used approximately 66% of the duplex as her personal residence and 34% of the duplex as a rental property.

## VI. Tax Return Preparation

Alan Forrester, an attorney and a certified public accountant, prepared petitioner's tax return for 2008. Petitioner testified that Mr. Forrester had prepared and filed her tax returns since 2005. Petitioner provided Mr. Forrester with her tax records and trusted him to properly prepare her tax return. She did not review the return for accuracy before it was filed. Petitioner testified that Mr. Forrester did not return her tax records after filing her return for 2008. Mr. Forrester did not testify at trial.

## VII. Ms. Hileman's Bankruptcy Proceedings

On December 1, 2009, Ms. Hileman filed a chapter 13 bankruptcy petition, including various schedules described below, with the U.S. Bankruptcy Court for the Central District of California (bankruptcy court). Ms. Hileman identified the duplex as her home address in the bankruptcy petition. She reported on Schedule A - Real Property that she owned an equitable interest in the duplex, that the property's fair market value was $350,000, and that the property was subject to secured claims totaling $574,000. On Schedule B - Personal Property Ms. Hileman reported that she owned furniture at the duplex worth $2,300. On Schedule C - Property Claimed as Exempt she claimed that the duplex and the furniture were exempt from inclusion in property of the bankruptcy estate pursuant

to 11 U.S.C. sec. 522(b)(3) (2006). On Schedule D - Creditors Holding Secured Claims she reported that Indymac and Wells Fargo held mortgages on the duplex.[6] On Schedule I - Current Income of Individual Debtor(s) she reported receiving $2,200 of monthly income from real property, and on Schedule J - Current Expenditures of Individual Debtor(s) she reported monthly rent or mortgage payments of $2,172.[7] The bankruptcy court dismissed petitioner's case in March 2010 after conducting a confirmation hearing.

Ms. Hileman filed second and third bankruptcy petitions on April 12, 2010, and September 22, 2013, respectively. The latter petitions were similar in all material respects to her original 2009 bankruptcy petition described above. In 2011 the bankruptcy court awarded Ms. Hileman damages when One West Bank[8] attempted to foreclose the mortgage on the duplex while her chapter 13 payment plan remained in effect.

[6]On Schedule H - Codebtors Ms. Hileman did not identify petitioner or any other person or entity that might be liable on the debts to Indymac and Wells Fargo.

[7]We infer that the rental income and mortgage payments that Ms. Hileman reported are attributable to the duplex--the only real estate asset listed in her bankruptcy petition.

[8]We take judicial notice that Indymac was acquired by One West Bank in 2009.

VIII.  Notice of Deficiency

Respondent issued petitioner a notice of deficiency disallowing $24,144 of the $25,717 deduction for mortgage interest that she claimed on Schedule A and the $25,000 deduction (rental real estate loss) that she claimed on Schedule E. Respondent determined that petitioner failed to show that the duplex was used as a rental property or that she was otherwise entitled to the disallowed deductions.

IX.  Petition for Redetermination

Petitioner alleged in her petition that she received a Form 1098, Mortgage Interest Statement, issued to Ms. Hileman reporting mortgage interest payments of $37,524 for 2008, that Ms. Hileman did not claim a deduction for mortgage interest on her Federal income tax return for 2008, and, inasmuch as she is the equitable owner of the duplex, the deductions that she claimed on Schedules A and E should be allowed.[9]

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290

---

[9]Petitioner did not produce the Form 1098 at trial.  Nor did she provide a copy of Ms. Hileman's 2008 tax return.

U.S. 111, 115 (1933).  Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).

Under certain circumstances, the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  Petitioner has neither alleged that section 7491(a) applies nor established her compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests.  Therefore, the burden does not shift to respondent under sec. 7491(a).  See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743

(1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

I. Mortgage Interest Deduction

Section 163(a) provides the general rule that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. Section 163(h)(1), however, provides that, in the case of a taxpayer other than a corporation, no deduction shall be allowed for personal interest. Interest paid on a mortgage secured by a qualified residence is excluded from the definition of personal interest and is therefore deductible. See sec. 163(h)(2) and (3).

To meet the requirements of section 163, the mortgage must be the obligation of the taxpayer claiming the deduction, not the obligation of another. Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), aff'g T.C. Memo. 1976-150; Hynes v. Commissioner, 74 T.C. 1266, 1287 (1980). However, section 1.163-1(b), Income Tax Regs., provides in relevant part: "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness." We have disallowed a deduction for mortgage interest where the taxpayer is unable to

establish legal, equitable, or beneficial ownership of mortgaged property. See Daya v. Commissioner, T.C. Memo. 2000-360; Song v. Commissioner, T.C. Memo. 1995-446.

The parties agree that Ms. Hileman was the responsible party on the first and second mortgages, and there is no evidence that anyone other than Ms. Hileman was financially responsible for the Wells Fargo mortgage. Likewise, the objective evidence in the record, including the deed of trust Ms. Hileman granted to Wells Fargo and the various schedules she filed with the bankruptcy court, point to Ms. Hileman as the holder of legal title to the property. Therefore, to be entitled to claim a deduction for mortgage interest, petitioner must show that she is a beneficial or equitable owner of the duplex. See Daya v. Commissioner, T.C. Memo. 2000-360; Trans v. Commissioner, T.C. Memo. 1999-233; Uslu v. Commissioner, T.C. Memo. 1997-551.

State law determines the nature of property rights, and Federal law determines the tax consequences of those rights. United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985); Blanche v. Commissioner, T.C. Memo. 2001-63, aff'd, 33 Fed. Appx. 704 (5th Cir. 2002). Cal. Evid. Code sec. 662 (West 1995) provides that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by

clear and convincing proof." See Puentes v. Commissioner, T.C. Memo. 2013-277, at *5. A taxpayer becomes the equitable owner of property when he or she assumes the benefits and burdens of ownership. See Baird v. Commissioner, 68 T.C. 115, 124 (1977); Blanche v. Commissioner, T.C. Memo. 2001-63.

Although petitioner contends that she held an equitable ownership interest in the duplex, we conclude otherwise. The record shows that petitioner made a few sporadic mortgage payments over the course of several years. There is no objective evidence, however, that Ms. Hileman, the legal owner of the duplex, entered into an agreement vesting petitioner with any ownership interest in the property. There is no evidence that petitioner had any duty or obligation to maintain or insure the property or that she was responsible for real estate taxes.[10] To the contrary, Ms. Hileman steadfastly maintained in numerous bankruptcy filings that she resided in and owned the duplex. She also exercised her rights under Federal bankruptcy law to protect the property from foreclosure. Against this backdrop, we are left doubting petitioner's story and troubled that she did not

_____

[10]This case is readily distinguishable from cases in which we have held that a taxpayer was entitled to a deduction for mortgage interest, even though a family member secured the mortgage as an accommodation, because the taxpayer exclusively had, and was intended to have, the benefits and burdens of ownership. See Trans v. Commissioner, T.C. Memo. 1999-233; Uslu v. Commissioner, T.C. Memo. 1997-551.

call Ms. Hileman as a witness at trial to explain the stark discrepancies in her trial testimony and the objective evidence in the record. Considering all the circumstances, we conclude that petitioner was not an equitable owner of the duplex during 2008, and we sustain respondent's determination disallowing so much of the mortgage interest deduction as petitioner claimed on Schedule A in respect of the duplex.

## II. Rental Real Estate Loss

Petitioner claimed a deduction for a rental real estate loss of $25,000--an amount derived from expenses totaling $25,830 that she attributed to the duplex, including insurance charges of $200, mortgage interest of $12,667, taxes of $2,546, gardening expenses of $600, and depreciation expenses of $9,817.

As previously discussed, Ms. Hileman was the legal owner of the duplex, and she informed the bankruptcy court that she received rental income in respect of the property during 2009. There is no objective evidence that Ms. Hileman entered into any agreement to permit petitioner to lease any part of the property at any time. Although petitioner produced lease agreements indicating that she had acted as lessor in respect of the duplex at various times before and after 2008, she admitted that she did not have a tenant during 2008.

Short of engaging in a detailed analysis of the passive loss rules prescribed in section 469,[11] we simply note that, consistent with petitioner's admission that she did not rent out the property during 2008, she was not engaged in a rental activity and is not entitled to claim a deduction for a rental real estate loss under the provisions of section 469(i). See sec. 1.469-1T(e)(3)(i)(A), (ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988); see also Hoskins v. Commissioner, T.C. Memo. 2013-36, at *10.

Equally important, petitioner failed to provide the Court with persuasive evidence that she was liable for, and in fact paid, the expenses in question. Consistent with the foregoing, we sustain respondent's determination disallowing the deduction petitioner claimed for a rental real estate loss of $25,000.

## III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or

---

[11]Sec. 469(a) generally disallows passive activity losses and credits. Although rental activity is generally treated as a passive activity regardless of whether the taxpayer materially participates, see sec. 469(c)(2), (4), the Code provides exceptions and special rules for taxpayers engaged in rental real estate activities, see sec. 469(c)(7), (i).

intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Respondent discharged his burden of production under section 7491(c) by showing that petitioner failed to keep adequate records and properly substantiate her claimed expenses. See sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into

account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

A taxpayer may be able to demonstrate reasonable cause and good faith (and thereby escape the accuracy-related penalty of section 6662) by showing reliance on professional advice. See id. However, reliance on professional advice is not an absolute defense to the section 6662(a) penalty. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). A taxpayer asserting reliance on professional advice must prove that: (1) the adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided the adviser necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). As a defense to the penalty, petitioner bears the burden of proving that she acted with reasonable cause and in good faith. See Higbee v. Commissioner, 116 T.C. at 446.

Petitioner relied on Mr. Forrester, a certified public accountant and an attorney, who had prepared her tax returns in previous years, to prepare a complete and correct return for the year in issue. However, the record shows that Mr. Forrester did not review the return with petitioner, nor did she review the

return on her own.  Taxpayers have a duty to review their tax returns before signing and filing them, and the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer.  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), aff'd, 651 F.2d 1233 (6th Cir. 1981).  Moreover, the record does not reflect whether petitioner provided Mr. Forrester with necessary and accurate information.  Petitioner did not call Mr. Forrester to testify at trial.

In sum, we are unable to conclude that petitioner acted with reasonable cause and in good faith within the meaning of section 6664(c)(1).  Accordingly, respondent's determination that petitioner is liable for an accuracy-related penalty under section 6662(a) is sustained.

To reflect the foregoing,

Decision will be entered

for respondent.